**BETHLEHEM SHIPBUILDING CORPORATION, Limited, et al. v. MONAHAN, Deputy Com'r, et al.**

No. 3522.

District Court, D. Massachusetts.
March 11, 1932.

Brown, Field & McCarthy, of Boston, Mass., for plaintiffs.

Frederick H. Tarr, U. S. Atty., and A. Chesley York, Asst. U. S. Atty., both of Boston, Mass., for defendant Monahan.

Wm. J. Holbrook, of Boston, Mass., for defendant Simpson.

BREWSTER, District Judge.

This is a suit to enjoin the enforcement of a compensation order made by the defendant Monahan, as deputy commissioner, under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424 (33 USCA §§ 901–950).

The sole question presented relates to the liability of the plaintiffs under section 7 (a) of the act (33 USCA § 907 (a) for medical and surgical treatment, hospital services, and nursing received by the defendant Simpson, an employee, for an occupational injury received while in the employ of the Bethlehem Shipbuilding Corporation.

### Statement of Facts.

The deputy commissioner after investigation and hearing made findings of fact, and upon these facts ordered the plaintiffs to pay for medical, hospital, and nursing services the following sums: $125 to Dr. Robert R. Ryan; $45 to Dr. William E. Browne;

$70 to the Weymouth Hospital; $24 to Mrs. M. F. Campbell.

From the findings of fact it appears that on the 14th day of March, 1931, the defendant Simpson was employed by the plaintiff shipbuilding corporation and received an occupational injury to his thumb, necessitating the amputation of a portion of it. The plaintiffs furnished medical treatment by Drs. McCausland and Burke until April 11, 1931. On Saturday, April 11, 1931, at about 2 o'clock in the afternoon, Simpson went to the office of Dr. McCausland for treatment. Dr. McCausland made an examination and found a condition which he diagnosed as lymphangitis. He applied hot bandages and directed the patient to go home and put hot dressings on the thumb every two hours. Dr. McCausland told Simpson then that he would be absent from home until the following Monday and advised that, if the treatment did not give relief, he get in touch with Dr. Burke or Dr. Frederick F. Jones, the plant physician for the employer. Simpson followed Dr. McCausland's instructions but did not obtain any relief, and about 8 o'clock p. m. of the same day he went for advice to the home of Dr. Howard B. Mitchell, first-aid man at the plant of the employer. Dr. Mitchell declined to treat him but told him to follow the directions of Dr. McCausland, and if he did not obtain relief to get in touch with Dr. Burke or Dr. Jones. Later in the evening, Simpson's condition becoming worse, efforts were made on his behalf to secure the services of Dr. Burke or Dr. Jones, but without success. Failing to get in touch with these doctors, the employee called his own physician, Dr. Ryan, who attended him about 11 o'clock of the same day. Dr. Ryan found him in a serious condition, suffering from blood poisoning, and ordered him immediately to the Weymouth Hospital, where he remained until April 26, 1931. While there, Dr. Browne, a Boston surgeon, was called in consultation. On or about April 15, a representative of the plaintiff insurance company communicated with Dr. Ryan and stated that the company would prefer that some surgeon other than Dr. Browne be called in consultation and offered him his choice of two surgeons in Quincy. This offer was refused by Dr. Ryan for the reason that, as he considered Simpson to be his patient, he had the right to choose a surgeon. On April 16 Dr. Browne removed several of the crusts over the stump of the thumb and also removed an imbedded suture.

The deputy commissioner also finds that the services of Dr. Ryan and Dr. Browne were necessary; that an emergency existed requiring immediate medical attention to prevent the spread of the infection to claimant's arm and possible death, and the employer neglected to furnish such medical attention; that the bills rendered by the physicians, the hospital, and the nurse were reasonable; and that both Dr. Ryan and Dr. Browne furnished the employer with a report within twenty days following the first treatment.

The plaintiffs contend that the commissioner's award is not in accordance with law for two reasons:

(1) There was no evidence before the commissioner to justify his finding that the employer neglected to furnish medical treatment.

(2) The general finding of the commissioner that the employer neglected to furnish medical treatment is inconsistent with his specific findings of fact.

### Conclusions of Law.

The deputy commissioner has found as a fact that an emergency arose necessitating prompt medical attention which the employer neglected to furnish. So far as this finding of neglect involves a pure question of fact, it must be regarded as final if supported by evidence. Crowell v. Benson, 52 S. Ct. 285, 76 L. Ed. ——, decided February 23, 1932. There was evidence warranting the findings of the deputy commissioner relating to the existence of an emergency and the unsuccessful attempts on behalf of the injured employee to reach the physicians offered by the plaintiff.

If the conclusion respecting the neglect of the employer is warranted by the facts upon which it is based, the award cannot be disturbed on the ground that there was no evidence to support it. The real question is whether the facts, set forth in the deputy commissioner's report, support the conclusion that the employer neglected to provide medical attention. I take it this question is something more than a question of fact and is open on review in these proceedings. In other words, this court is called upon to determine whether there was such neglect on the part of the employer that the statute, section 907 (a), will render it liable for the medical and hospital services obtained by the employee.

The statute provides that the employee may provide medical treatment at the employer's expense if the "nature of the in-

jury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same. * * *"

In the case at bar the nature of the injury was such that there was pressing need for medical treatment. The employer's representative knew of it. The employee was unable to secure promptly the services of the physician recommended by the employer. I do not believe that under such circumstances an employee who does not elect to risk the serious consequences which may result from delay loses his right to obtain relief at the employer's expense. There may have been no refusal and no intentional neglect on the part of the employer, nevertheless the employee had looked to his employer in vain for prompt medical attention which the emergency demanded. The law intends that the employer shall provide medical care, hospitalization, and nursing, to an employee while in his employ, if the employee requests it. I am of the opinion that under the circumstances of this case the terms of the statute do not relieve the employer from the duty of providing such care. Koch v. Lehigh Valley Ry. Co., 217 App. Div. 280, 216 N. Y. S. 609; Id., 244 N. Y. 578, 155 N. E. 904, cited by the plaintiff, is distinguishable upon the facts. There the employee promptly called in his own physician without first requesting the employer to provide treatment, nor did the latter have any knowledge of the injury until some days after it had occurred.

The award of the deputy commissioner should be affirmed except as to the payment to Dr. Browne. Before he had operated, the plaintiff insurance company had offered the services of three competent surgeons in Quincy and had refused to sanction the employment of Dr. Browne. In view of these facts, it cannot be held that the plaintiffs either refused or neglected to provide a surgeon. Dr. Ryan's insistence upon Dr. Browne could not impose upon the plaintiffs the expense incurred for his services. The rights of the parties must be adjudged with reference to the statute and not according to professional etiquette.

I rule, therefore, that the award requiring the plaintiff to pay $45 to Dr. Browne is not in accordance with law, and the award is set aside only so far as it relates to such payment. In all other respects the award is affirmed, and an injunction may issue.